Good morning. We have four cases that are scheduled for oral argument this morning. Before we begin, Judge Newsom and I are delighted to have Judge Kugler with us this week. Judge, we appreciate you taking time away from your busy docket to help us decide these cases this week. Thank you. In the first case, I see counsel are ready. United States v. Michael Bishop. Ms. Salant is here for Bishop. Mr. Zack, Mr. Smith for the government. You ready to proceed, Ms. Salant? Good morning. May it please the court, counsel, my name is Megan Salant and I represent Mr. Bishop in this appeal. I would like to reserve five minutes for my rebuttal. As I'm sure this court is aware, the United States Supreme Court recently granted certiorari on the issue that was raised in Issue 3 of our brief. And so I would suggest that it would be in this court's best interest to spend our time today on Issues 1 and 2. With regards to Issue 1, Mr. Bishop maintains that law enforcement did not have a reasonable suspicion that their safety was at risk to support a pat-down of Mr. Bishop after they removed him from the car during the traffic stop. And with regards to Issue 2, Mr. Bishop maintains that the district court erroneously applied the four-level enhancement for possessing a firearm in possession with a drug trafficking offense. The court only cited to proximity when it was deciding whether or not the possession was in connection with another felony offense. And there was no reference to any evidence of drug trafficking that was... Well, let's talk about the first issue. Sure. The court error in denying the motion to suppress. Yes, sir. I note that we previously, in United States v. White, we set forth several factors for the courts to take into consideration in determining whether a pat-down search supported by reasonable suspicion. Two of those factors are one is known criminal history and another is nervousness or evasiveness on the part of the person who is being subjected to the pat-down search. The district court in this case found that Mr. Bishop was nervous and defensive and agitated. He was giving the officers a hard time. He wouldn't get out of the car. He was giving them a hard time. He was nervous. More importantly, one of the backup officers, Deputy Dunsford, I think his name was, who was, he recognized Bishop as a previous inmate at the county jail. Why isn't that enough? Are either of those factors clearly erroneous? Well, I would certainly say that Officer Dunsford's recollection of seeing Mr. Bishop in the jail previously, I can't imagine why that alone would be enough. There are lots of reasons. Alone, Judge Wilson said. Not alone, right? That's in combination with the agitation, the nervousness, especially in juxtaposition to the other fellow who was immediately cooperative, right? Right. Of course. I was just trying to address them separately. So I would say that using the idea that they had seen him in the jail previously, relying on that at all, I believe was clearly erroneous. So there was no basis for what they saw him in the jail for. They didn't even say that he gave them a hard time. In fact, one of the officers cited to his relationship with Bishop as having a good rapport with him from him being in the jail. Go ahead, Judge Wilson, please. Wasn't there a woman who had previously been arrested who said she was on her way to his house with heroin? Yes, there was. Is that clearly erroneous? Well, I mean, that's just a fact, but I don't know how that would lend to say that they would think that he was a risk to officer safety. Just because someone with drugs on them is going to someone's house, I don't, that seems, I don't even know how you could connect that to officer safety. So let me ask you this. You said a few minutes ago, you said the reliance at all on the fact that Dunsford knew this fellow from the jail, how they could have relied on that even at all, that was impermissible. But I mean, one of the factors in the white test that Judge Wilson laid out, in addition to criminal history and nervousness or evasiveness, is were the suspects known to law enforcement? I mean, we have acknowledged that the knowledge of people as people is a relevant consideration. And I think, you know, cops have to make these split second judgments. Why wouldn't we allow intimate knowledge of an individual to inform that judgment? Sure, I understand that. But I will point out that in white, the officers specifically said that they that the defendant was known to give them trouble. And in this case, like I said, the officer stated on the record that they had a good rapport with Bishop. Was that good rapport from when they were at the jail with him? I assume. They certainly didn't have a good rapport with him out there that day, did they? Well, I would argue that the officer's description of the events was much more mild than what the district court concluded in its order denying the motion to suppress. The officers made no comment about why they why he was in the jail, what it was about him being in the jail previously that led them to believe that this time he was. They didn't say, well, he was in the jail and, you know, started a riot or he was in the jail for already beating up a cop. And so therefore, we know that he has this history of of being violent. You have a few minutes left. I think you have a stronger argument on the sentencing issue. OK, would you like me to address that? Second, for what it's worth, second. With regards to the second issue, the. How do you get around the government relies on the United States versus Carrillo Ayala? How do you get around that case? So the Carrillo Ayala case was, first of all, the Carrillo, the offense in Carrillo was a trafficking offense, not a. It was a conspiracy with possession to intent to distribute, not a possession case. And there was quite a bit of evidence in that case connecting the defendant to that, to the. To the drugs. And I will say that in this case, in Gibbs, since Carrillo Ayala, this court has distinguished it as saying that because they were talking about the in connection with and that it was a trafficking offense, it might not necessarily be an unpublished opinion. So it's not binding on us. It's not binding, but I think that it obviously lends it. It sheds light on what this court has said in the past and more recently than what it said in Carrillo. What about just the I thought I might have thought you would have said, let's look at the plain language of the sentencing guidelines. There is one provision that applies to crime generally, and then there's one provision that by its terms applies to drug trafficking offenses. Correct. This is or is not a drug trafficking offense. Well, we would argue that it is that the connection in connection to is because the only factor that the judge cited at sentencing was proximity. And the only way that proximity alone can be enough is if it's a trafficking offense. But I would note that the government in their brief argues that that the judge made the finding based on the facilitation to the drug possession charge. So my understanding, you can correct me. My understanding of the record was that there actually wasn't a finding about facilitation. There was only a finding about proximity. And that the district court said, looking at Carrillo, proximity is good enough because Korea has got this kind of loose language in it that says drug offense. But in fact, the sentencing guidelines say drug trafficking offense, of which this is not one. Right. OK. All right. So but you're but I'm right about the record that there wasn't a finding about facilitation. There was no facilitation. And I will say that there also was no nobody argued it. There was no discussion about whether or not Mr. Bishop was involved in any sort of trafficking offense. So it's I do think that the record is a little bit muddy on that issue. Although the judge cited to the paraphernalia that was found in the car, there was nobody even argued that that was attributable to Mr. Bishop. It wasn't his car. So how they could say that he possessed that firearm in connection with a trafficking offense that nobody claimed he was part of. It's I think it is confusing. So I mean, I'll have to confess if you haven't read it already. I kind of like your argument on the plain language. I do feel a little squeamish about it because it seems awfully formalistic. I can't quite figure out when it is that proximity, genuine proximity, wouldn't also have the potential to facilitate a drug offense. So if you're basically it seems to be if you're in drug offense land, you've got to show potential to facilitate. If you're in trafficking land, you just have to show proximity. But if there's genuine proximity, I mean, are we sort of not also in potential to facilitate land? Well, so in this case, so are you asking what our argument would be with regards to whether or not it facilitated? Yeah, like let's I guess let's say we bust the sentence and we send it back. What is the what does the hearing look like? Is the government on the same evidence and then just show, see, there was genuine potential to facilitate same sentence. So we would argue that that the gun was not loaded, that it was not in the pocket with the the one pill and that a firearm would. It's it seems improbable that a firearm would facilitate the possession of one delighted pill. And there are cases to that effect that talk about, you know, for instance, in Gibbs, we spent a lot of time talking about the street value of of two Xanax pills. And I would argue that the I don't know the street value of one delighted pill, but I would presume it's less to your credit bills. Thank you. I don't either. Excellent. Well, maybe the district court does, but we need to have a finding to that effect. Thank you. All right. Thank you, counsel. We'll hear from Mr. Smith. Good morning, Your Honors. Please, the court. Your Honor, I believe counsel for Mr. Bishop is correct on issue three. That issue is directly controlled by this court's decision in the United States versus Smith. And so I believe at this time this panel would be bound by the court's prior decision on that issue. Briefly, with respect to issue one, the search issue, Your Honors, the record does support support that the totality of the circumstances known collectively by the officers at the time of the stop supported a reasonable suspicion that Mr. Bishop was armed and dangerous. As the officers testified at the hearing, Mr. Bishop became agitated. He became verbally defensive, suggesting to the officers they didn't have the authority to pull him out of the car. He began shifting around in his seat, coupling those actions. Those actions alone are sufficient to give the officers reasonable suspicion. But coupled with the other factors known by the officers, as you mentioned, Judge Wilson, the fact that a mere three hours earlier, one of the deputies had pulled over someone who said she was on her way to Mr. Bishop's home to buy heroin. And also with the fact that both the driver, Mr. Davis, and the passenger, the defendant in this case, Mr. Bishop, were both known to law enforcement officers at the time of the stop. All support that there was reasonable suspicion under the totality of the circumstances to justify the search. And based on those facts, we suggest it was not error for the district court to find as it did below. Moving on to the second issue, Your Honor, the sentencing enhancement under the sentencing guidelines 2K. The issue here is whether the firearm was used in connection with another felony offense. And as the guidelines show, there are two ways that the district court could find that the firearm was used in connection. For a simple possession case, as you mentioned, Judge Newsome, there has – if the firearm facilitated or had the potential to facilitate the simple possession, it was used in connection with another felony offense. And for drug trafficking offenses – The problem is that there was no facilitation finding by the district court. Your Honor, this court ultimately reviews the judgment of the district court. And the government would suggest that as long as there is a sufficient factual basis in the record to support the district court's ultimate finding, the finding that the firearm was used in connection with another felony offense, this court can and should affirm the district court's judgment. And we believe there's – So we can make that finding ourselves? No, Your Honor. I believe as long as there is a factual – the finding was that the firearm was used in connection with another felony offense. The district court made that finding. But in the course of making that finding, it made the subsidiary a necessary finding that it was in proximity, nothing about facilitation, as Judge Wilson says. There are two paths to in connection. The district court chose one path, the proximity path, not the other path, the facilitation path, and that's the wrong path. Do you acknowledge that that's the wrong path? Respectfully, Your Honor, I believe that the factual basis in the record would support a finding of in connection under either path. But do you – just so we're on the same sheet of music here, do you acknowledge that proximity is the wrong path for a non-trafficking drug offense? I believe under this circuit's case law, there would have to be enough factual support in the record to show that there was facilitation. I believe – or the potential to facilitate. Proximity can certainly be one factor that the court considers in making that finding. So you don't think that Carrillo gets you all the way home, this loose language in Carrillo that calls it a drug offense even though it was a trafficking offense. You don't think that that gets you sort of the silver bullet through proximity to in connection with? Well, I believe, Your Honor, this court has never made a finding that proximity alone in a simple possession case is sufficient. And I don't believe it needs to make that finding in this case either. And I don't believe it needs to make that finding because, again, the factual basis on the record would support the in connection under either path, either the possession path or the trafficking path. Because if we look at the facts in this case, what Mr. Bishop's counsel has termed as one dilaudid pill and three syringes, the factual basis is actually more ample and more nuanced than that. Because if you look at the facts that the district court considered, yes, you had on Mr. Bishop's person the firearm, a loaded magazine with 19 rounds in it. You had the dilaudid pill and the syringes, but in the car, you also had a scale. You also had a baggie that contained numerous other smaller plastic baggies, items that you typically find in drug trafficking, taken in connection with the evidence that Mr. Bishop had previously been convicted of drug trafficking, that he hadn't worked in nearly four years at the time of this offense. So our opinion would have to say that the gun facilitated the trafficking of one pill? I believe it would be... This is like a prescription pill, right? You get prescription for it. I believe it's a slightly different – focusing on more than the one pill, Your Honor. Because the one pill would certainly support the facilitation of the simple possession charge. The one pill, if we focus alone, would be more akin to the simple possession. But when we look at the facts, all of the facts on the record, it could support a finding by this court that the proximity was properly applied under the drug trafficking prompt. So there's no – you're not really relying upon any prior authority, any cases. You're telling us to look strictly at the language of the statute and the application note, period. For the drug trafficking prompt, Your Honor. And so if we accept your argument, wouldn't that put us at odds with the Third, the Fourth, the Sixth, and the Eighth Circuits? Your Honor, other circuits have certainly ruled that proximity alone in a simple possession case is not sufficient. But, Your Honor, again, if we look at the facts in this case and what this court said in the Gibbs decision, which I believe you were on the panel in that case, Judge Wilson. The court in Gibbs laid out a number of factors that courts could consider in applying the simple possession prompt basically. And Gibbs was also factually distinguishable from the present case. In Gibbs, the firearm, the simple possession items, the narcotics, the defendant, were found in the kitchen of a home. Let me ask you this, Court. I think we know where the stuff was found in Gibbs and the gun found in the attic and whatnot. But if we conclude that simple possession, that we should go along with some of the other circuits that have laid out the test, the different factors, including was it in the public? Did they have it in the public? That kind of stuff. Are you saying that we need to remand the case and allow the district court to make a factual way the facts and make findings specifically concerning those factors? No, Judge Kugler, because I believe there is already a sufficient factual basis on the record that would enable the court to uphold the district court's finding that the firearm was possessed in connection with another felony offense. And it wasn't. And then we wouldn't have to do it based on trafficking. We could do it based on the possession charge, but we would have to find – we would go through those factors ourselves? You certainly could do that, Judge Kugler. And I believe those factors would support affirming the district court's ruling because this case, there is a sufficient factual basis. It was in the public. It was in a car. The firearm wasn't down the hall from the defendant. It was on his person. When they shook his pants leg, it fell out of it, taken in conjunction with the fact that there was no other legitimate reason proffered by the defendant for possessing the firearm.  Is that correct? He is, Your Honor. He admitted that at the time of his arrest, he was addicted, taking daily doses of heroin and methamphetamine. He also said he would take morphine and Roxy pills whenever he could get possession of them. Coupling that with the fact that he hadn't worked since 2013, there's certainly a factual basis that would support upholding it under the simple possession prompt. Also considering that at sentencing, a letter was received from one of his children's grandmother that said that Mr. Bishop bragged about using guns and robbing other drug dealers. And so there certainly would be— Was any objection made to that letter from counsel at sentencing? Your Honor, my understanding is that the letter was received shortly before sentencing. And I believe counsel's words were, we just request the court to give the letter whatever weight that the court believes it deserves. And wasn't there also a letter that he had taken items from family members and sold them? I believe that was the same letter, Your Honor. Some of the allegations were that in order to support his habit, while one of his family members was hospitalized, he'd stolen a considerable amount of money in order, again, to feed his daily addiction to methamphetamine and heroin. And was there—the individual that was driving the vehicle, didn't he have prior convictions for drug dealing? He did, Your Honor. And in fact, the officers who testified at the suppression hearing in this case both testified that they knew both the driver, Mr. Davis, and the passenger, Mr. Bishop, based on their prior interactions with law enforcement. So can I ask you a question? Absolutely. I mean, it sounds like you think, you might be right, that you've got a pretty solid case. Were we to remand for a resentencing, you've got a pretty solid case to show that there was a potential to facilitate here. The problem is, like, first go around, that wasn't your theory. You were kind of riding another theory. You were riding Carrillo, and all we've got to show is proximity. And so that's, like, all that happened in the district court. The only findings that were made were with respect to proximity. So what's the harm, really, in us sort of requiring the district court and the U.S. attorney, I guess, to turn square corners and do it the right way? We say, no, no, no, you can't go under proximity for a simple possession offense. You've got to go the tougher route, the potential to facilitate route. We bust the sentence. We remand it. And you do it. And maybe you win. Maybe it turns out exactly the same way. But what's the harm in us requiring the district court to make that finding in the first instance instead of, as Judge Wilson says, of doing it ourselves? Your Honor, because the – I mean I get it that it's easier for you to go ahead and win now. Right. I understand, Your Honor. It certainly is easier. Yeah. But this court's case law is clear, and it's been applied across the board for many, many years, that as long as there's a factual basis in the record, there's nothing inappropriate or improper. And it's not even necessarily going the easier route, Judge Newsom, that for this court to look at the facts in the record that the government has already put on and introduced by preponderance of evidence. Well, you say our case law is clear, and I'm assuming that you're referring to Carrillo Ayala, but Carrillo Ayala involved a drug sale and not a drug possession. It did, Your Honor. But I'm also speaking more broadly, Judge Wilson, about the ability of this court to look beyond – to look at the fact that they're ultimately reviewing the judgment, the ultimate decision of the district court. And I believe this court's precedent amply supports the idea that as long as there is any factual basis in the record to support the district court's ultimate decision, that this court can uphold the district court's decision without remanding it. You're basically saying if there's another reason or another way we can affirm the district judge that that's our obligation? Correct, Your Honor. For instance, I know in Florida courts it has a flashy name, the Tipsy Coachman Doctrine. I don't believe the court has ever adopted that term to refer to it, but it's essentially the same idea. As long as there's a factual basis, this court's practice and obligation, as you suggest, Judge Kugler, is to affirm the district court's decision. And with that, Your Honors, the government respectfully requests that the district court uphold Mr. Bishop's – that there was reasonable suspicion for the traffic stop and that it uphold the district court's decision to apply both of the sentencing enhancements in this case. Thank you. Thank you, counsel. Ms. Salat, you have reserved some time. I would just like to address the issue regarding reversing for the district court to make – I'm sorry, whether or not this court can affirm for any reason that's in the record. And I struggled with this issue when I was getting ready because I feel like it's very confusing. So what the district court decided was that the drugs – or I'm sorry, the firearm was in close proximity to – Can we – you were about to answer your question. Can you go back and answer that question? Counsel for the government said that we've got basically an obligation to affirm the district court if we can do so in the record for – is that true or not? Not in this case. I don't – I understand, but generally speaking, is that true? Yes. Okay. Go ahead. You can explain. So – but I feel like that it – saying that is confusing what really happened here is that the district court's decision in this case was that the firearm was found in connection with drug trafficking. So we have to look – if we're going to say that we believe that proximity wasn't enough and that the – I'm sorry. If we're going to say that the judge made a decision based on trafficking and that it had to include other facts with the proximity, then you need to consider other facts that weren't in evidence. Is there any dispute that your client had that one pill in his pocket? No, sir. Is there any dispute that when the police officer asked him about the gun or patted his leg or whatever happened, the firearm fell out after – I think they found the magazine first? There's no dispute. That's correct. Is there any dispute that there was a digital scale in the vehicle found there? No, sir. Is there any dispute there was marijuana found there? No, sir. Is there any dispute that the driver had a drug conviction, at least one if not more, prior to the stop and that the officers knew that? No, sir. Okay. But I don't believe that any of those facts support a finding that the gun was used to facilitate a drug possession or that it was close enough – any of those factors are not related necessarily to my client. It's used or could have used, right? Well, that's for the facilitation. I understand that. Okay. But what I'm saying is that I feel like we're mixing apples and oranges. So all of the evidence – a lot of the evidence that you just described had to do with trafficking. Nobody ever claims that any – But would there have been a difference if the court went the one way and said this is a trafficking offense or said absolutely this firearm, this person who's addicted to drugs has this one pill which would have been extremely valuable to him at the time because he had one pill and that the firearm would have clearly been available to him since he had it in his pants, not like in another room, that if necessary he could have used that to facilitate his continued possession of that pill. Is that not true? And would it have made a difference if the court found that as opposed to trafficking? If the court had laid out all those factors, then I think it would have made a difference, but it didn't. Would it have made a difference at all? In other words, would there still have been the same enhancement applied? No, I believe that the enhancement then would have been applied under the note 14A and not 14B. I just want to – But would it have been the same points? It would have been the same points. Okay. Yes, you're correct. Wouldn't it have made a difference then in the sentence, in the guideline range? No, it would not have made a difference. Okay. But I do want to point out that even those factors that you just cited, this court has previously said might not be enough. So, for instance, in Carrillo, the court said the scope of the phrase potential facilitate the offense is limited to circumstances showing the firearm's availability for use as a weapon or attempt to use the firearm in a manner that would facilitate the offense. Let me ask you this question. You're an assistant federal public defender and you participate in these sentencing hearings. Let's assume that we send the case back for resentencing. Sure. There's a resentencing hearing, right? Yes, sir. And so, there are facts on the record that might support facilitation. But at resentencing, you have an opportunity to present other evidence as well, right? Correct. So, there may be some evidence that was not presented before that you would present on resentencing that might convince the district judge that the firearm was not there to facilitate drug trafficking. Sure. Right? Evidence and argument. Argument and other evidence. Right. Absolutely. Absolutely. And your client would have an opportunity to testify too and the judge might accept your client's testimony over the testimony that we have in the record. Absolutely, Your Honor. Okay. That's the argument. I think that's probably your strongest argument. Okay.  Just in time. All right. Thank you. All right. Thank you, counsel.